UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

STEIN HEATH COLE,

               Petitioner,

     v.

J. LIZARRAGA, Warden,

               Respondent.

No.  1:14-cv-01205-DAD-SKO  HC

**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Stein Heath Cole is a state prisoner proceeding *pro se* with an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The amended petition alleges the following grounds for relief: (1) prosecutorial misconduct and disqualification; (2) due process violation (Evidence Code 1101 is void for vagueness); (3) denial of right to jury trial on prior convictions; (4) ineffective assistance of trial counsel; and (5) ineffective assistance of appellate counsel.  Having reviewed applicable law and the record as a whole, the undersigned finds that because the state court addressed on the merits only grounds four and five, which alleged ineffective assistance of counsel, the Court may only consider those two grounds for relief.  Following further review, the undersigned recommends that the Court deny relief on those grounds.

///

1

# I.     **Factual Background**[1]

## A.     **The State's Case**

At about 10:30 a.m. on December 11, 2008, Corcoran Police Department dispatcher Martha Augustus received a 911 call originating from Petitioner's home.[2]  The call was an open line; no one spoke directly to Augustus although she could hear male and female voices arguing in the background.  She dispatched law enforcement personnel to the scene.

Officer Alex Chavarria was the first to arrive.  When he approached the front door,[3] he heard a male voice shouting and a female voice crying inside the house.  Chavarria knew that Petitioner and his wife, Kim Cole, lived there.[4]  After a second officer arrived, Chavarria knocked on the front door, but no one responded.  Chavarria requested the assistance of his supervisor, Sergeant Jason Bietz.  When Bietz reached Petitioner's home, Chavarria explained what had happened, and both officers went to the front door.

Appellant responded, opening only the interior door and speaking through the security door.  Bietz and Chavarria advised Petitioner that they had been dispatched for a welfare check on a female occupant.  Petitioner told the officers that he had been arguing with his wife, but she was fine.  Petitioner refused to come out, closed the door, and refused to respond to the officers' continued requests for entry to confirm Mrs. Cole's safety.

Chavarria then retrieved a pry bar from his squad car, and Bietz attempted to pry open the locked security door.  Petitioner threatened to shoot if the officers continued to attempt entry.  Concerned for their safety, the officers retreated.  After about thirty minutes, Petitioner came out of the house and surrendered to police, who arrested him.  Mrs. Cole and her three-year-old son emerged shortly thereafter.

///

///

---

[1] The factual background is derived from *People v. Cole*, 2013 WL 1696855 (Cal. App. April 19, 2013) (No. F062418) (Lodged Doc. 4).

[2] Petitioner's three-year-old son dialed 911 but did not speak to the operator.

[3] Both the front door and the security screen door in front of it were closed and locked.

[4] Officers testified that they were frightened because they believed Petitioner to have been armed in prior encounters with law enforcement.

Bietz spoke with Mrs. Cole and her son. Mrs. Cole had fresh injuries to her face, including lumps and swelling of her forehead, an abrasion on the bridge of her nose, and blood in her left eye.

Bietz and Chavarria conducted a protective sweep of the house to ensure no other individuals were present. Inside the house, they saw marijuana plants in various stages of growth.

Bietz contacted the Kings County Narcotics Task Force and secured a search warrant for the home. The search revealed that Petitioner used nearly all portions of the house to grow and process marijuana. Several rooms were devoted to plant propagation and hydroponic growth tanks. Petitioner had equipped the house with various fans and filters to reduce the distinctive odor associated with growing and processing marijuana. The ceiling of the child's room was outfitted with a network of wires from which harvested marijuana could be hung to dry. Police found additional processed marijuana and numerous firearms in two backyard sheds. The backyard also had containers for storage of chemicals used in plant propagation and growth. Senior criminalist Steven Patton of the California Department of Justice analyzed 8.31 pounds of the plant material seized from Petitioner's home and confirmed that it was marijuana.

Petitioner was detained while awaiting trial. Jail officers recorded numerous phone calls made by Petitioner, including calls to his home on December 18 and 26, 2008. Bietz reviewed dozens of the recorded calls and heard Petitioner telling Mrs. Cole not to testify in court and to avoid being served with a subpoena. Petitioner advised his wife that she might need to leave town to avoid service. In another call, Petitioner directed Mrs. Cole to visit him at the jail so that they could get their story straight. Petitioner told Mrs. Cole that a woman named Priscilla injured her. In another call, Petitioner told his wife that if she were to die, her out-of-court statements to law enforcement could be used against him in her absence. These recordings were played at Petitioner's trial.

### B. The Defense Case

Petitioner testified at trial. He told the jury that on the morning of December 11, 2008, he was roused from sleep by a loud sound, like a door slamming. Mrs. Cole was screaming and covering her eye with her hand. When she moved her hand away, the eye was red. Petitioner

3

opened the security door and looked out into the yard where he saw Priscilla,[5] a woman with whom Petitioner had been having an affair, running into his neighbor's yard.

After Petitioner closed the door, he and his wife began arguing about Priscilla. His three-year-old son called 911. The shouting and screaming that the dispatcher heard was Petitioner and Mrs. Cole arguing and throwing water and soda at one another. As the argument began to resolve itself and Petitioner was getting an ice pack for his wife's eye, he heard the officers' knocking at the door. Petitioner panicked. He assumed that his neighbors had set him up as a result of an unrelated incident.

Eventually, Petitioner went to the door and told Bietz that there was no problem and that the officers could leave. Bietz pointed a gun at Petitioner and said that he would blow off Petitioner's head if Petitioner would not let the officers in. Petitioner replied, "Not today you're not," and closed the door.

Afraid for his life, Petitioner called 911. He did not have a shotgun and was bluffing when he said that he would shoot the officers. After speaking with his attorney, Petitioner went out of the house and surrendered to police. The officers ordered him to the ground and held a sawed-off shotgun to his head before handcuffing him and confining him in a patrol car.

Testifying that the guns in the garden shed belonged to his father, Petitioner denied that he possessed the firearms. He told the jury that he had the necessary medical cards to grow marijuana for medicinal purposes and that he himself used marijuana to relieve his chronic pain. He also grew marijuana for seven other individuals who had medical use cards.

Petitioner denied selling any marijuana, testifying that he donated it to co-ops such as the Compassionate Cannabis Information Center in Goshen, California. Confronted with evidence that at least one dispensary gave him money for marijuana, Petitioner testified that he donated the marijuana to the dispensary and that the dispensary made voluntary contributions to help defray Petitioner's substantial expenses in propagating and processing the marijuana. Petitioner contended that he never possessed more marijuana than he was legally entitled to have for personal use.

---

[5] Petitioner claimed not to know Priscilla's surname.

4

Petitioner was aware that officers recorded inmates' calls from the county jail and testified that he taunted officers in his calls because he believed that he had been set-up. He denied telling his wife not to testify or to avoid service of the subpoena, claiming that he was simply telling his wife that if she did not truthfully testify to Priscilla's assaulting her, he would be "screwed." He denied collaborating with his wife on a story to be told in court, maintaining that he was merely "refreshing her memory." He added that officers had threatened Mrs. Cole with the loss of their son if she did not testify against Petitioner. As a result, Mrs. Cole was afraid to testify, believing that if she showed up in court, child protective services would take away their son.[6]

## II.   Procedural Background

On August 4, 2009, the Kings County District Attorney filed a complaint charging Petitioner with (1) corporal injury to his wife, Kim Cole, including great bodily injury (Cal. Penal Code §§ 273.5(a) and 12022.7(e)); (2 and 15) forcibly resisting arrest (Cal. Penal Code 69); (3 and 14) criminal threats (Cal. Penal Code § 422); (4) unauthorized cultivation of marijuana (Cal. Health and Safety Code § 11358); (5) possession of marijuana for sale (Cal. Health and Safety Code § 11359); (6) being a felon in possession of a firearm (former Cal. Penal Code § 12021(a)(1)); (7) possession of an assault weapon (former Cal. Penal Code § 12280(b)); (8-12) attempting to dissuade a witness (Cal. Penal Code § 136.1(a)(2)); (13 and 17) resisting arrest (Cal. Penal Code 148), and (16) possession of dangerous fireworks (Cal. Health and Safety Code § 12677). The prosecution dismissed count 7 during trial. Petitioner was tried before a jury, which found him guilty of all the remaining counts and found true the great bodily injury enhancement. On March 18, 2011, the trial court sentenced Petitioner to an aggregate term of thirteen years and eight months in custody.

Petitioner filed a direct appeal to the California Court of Appeal, which affirmed the convictions on April 19, 2013. On July 24, 2013, the California Supreme Court denied a petition for review.

///

---

[6] Mrs. Cole did not testify at Petitioner's trial. At the sentencing hearing, she said that the blood in her eye resulted from glaucoma, not an assault by Petitioner.

On July 21, 2014, Petitioner filed a habeas petition in the United States District Court for the Southern District of California. The Southern District transferred the case to the Eastern District of California, which is the proper venue. On February 12, 2015, the Eastern District stayed the petition to permit Petitioner to exhaust his claims in state court.

On November 18, 2015, Petitioner filed a habeas petition in Kings County Superior Court. On March 1, 2016, the superior court denied the petition as untimely and rejected the claims of trial error and statutory rights as improperly raised in a habeas petition. The court briefly analyzed the ineffective-assistance-of-counsel claim and held that Petitioner failed to carry his burden of proof.

On April 11, 2016, Petitioner filed a habeas petition in the California Court of Appeal, which denied the claim as untimely on May 13, 2016. On July 13, 2016, Petitioner filed a petition in the California Supreme Court, which denied the petition as untimely on September 16, 2016.

On October 21, 2016, Petitioner filed an amended federal habeas petition. The petition sets forth each ground for relief and discloses the context in which that ground was presented to the state court, but does not allege factual support for any claim. Petitioner appears to rely on the memorandum of points and authorities prepared for the California Supreme Court habeas proceedings, which Petitioner attached to the federal petition.

**III.     Applicable Federal Standards**

      **A.     Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because Petitioner filed it after April 24, 1996.

///

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

**B.**     **Clearly Established Federal Law**

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. To do so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the

*///*

state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

## C.     The First Three Claims Were Not Adjudicated on the Merits

Before proceeding with substantive analysis, a district court must also determine whether the state court adjudicated the petitioner's claims on the merits. In this case, Petitioner raised all five claims alleged in the federal amended petition in the state habeas petitions. With the exception of the ineffective assistance of counsel claims, however, the state courts declined to address the petition on its merits, finding the claims to be untimely and procedurally defaulted.

Although Respondent acknowledges that the superior court's decision was denied on procedural grounds, Respondent's answer also recites that the state court denied the petition on the merits. The last reasoned decision is that of the King's County Superior Court, which denied the petition as untimely and added that certain claims that were not raised on direct appeal were not cognizable in the state habeas proceedings. *See In re Cole* (Kings Cty. Superior Mar. 1, 2016) (No. 15W-0205A), reproduced at Doc. 31 at 192-94. The court wrote:

///

8

IT IS HEREBY ORDERED, the petition is denied as untimely. In addition, a writ of habeas corpus is not a substitute for an appeal. (See, *In re Clark* (1993) 5 Cal. 4th 750; 13 Cal. Jur. 217, §4). Errors in the trial and denial of statutory rights which could be waived are grounds of appeal, but are not grounds for discharge on habeas corpus. (13 Cal. Jur. 236, §17). Finally, to prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate by a preponderance of the evidence that; "(1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the petitioner to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the petitioner." (*In re Jones* (1996) 13 Cal. 4th 552, 561; *People v. Plager* (1987) 196 Cal. App. 3d 1537, 1542-1543; *see also, Strickland v. Washington* (1984) 466 U.S. 668, 691 [an error by counsel, even if professionally unreasonable, does not warrant setting aside a judgment in a criminal proceeding if the error had no effect on the judgment].) The petition fails to meet this burden. (*See, People v. Duvall* (1995) 9 Cal. 4th 464, 474.)

*In re Cole*, Doc. 31 at 192-93.

"[A]n application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless deferential review warrants issuance of the writ. *Lambert v. Blodgett*, 393 F.3d 943, 966 (9th Cir. 2004) (quoting 28 U.S.C. § 2254(d)). "In the context of federal habeas review, the 'adequate and independent state grounds' doctrine customarily distinguishes between adjudications 'on the merits' and dismissals on procedural grounds, the latter of which are generally not subject to federal habeas review." *Lambert*, 393 F.3d at 967. "The decisive factor necessary to trigger AEDPA deference is . . . whether the state court adjudicated the defendant's claims." *Id.* at 968. A federal habeas court must ask, "did the state court decide the claim on the merits?" *Id.*

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Harrington*, 562 U.S. at 99. In this case, however, the superior court explicitly denied the petition as a untimely and added that "errors in the trial and denial of statutory rights which could be waived" were not properly

9

raised in a habeas petition but should have been raised in Petitioner's direct appeal. "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). In such cases, federal court review of the claim is also barred unless the defendant can demonstrate cause and prejudice for the default. *Id.* at 806 (citing *Murray v. Carrier*, 477 U.S. 493, 495-96 (1986)). Accordingly, this Court may not review Petitioner's first three grounds for habeas relief: (1) prosecutorial misconduct, (2) due process violation arising from a constitutionally vague evidence provision, and (3) the denial of a jury trial to determine Petitioner's prior convictions.

## IV.    Ineffective Assistance of Trial and Appellate Counsel

Petitioner contends that trial counsel Eric Schweitzer and Stephen Girardot,[7] and appellate counsel Daniel Koryn all provided him with ineffective assistance. In a single paragraph, the Kings County Superior Court addressed Petitioner's claims of ineffective assistance and concluded that Petitioner did not prove "that, but for counsel's failings, the result would have been more favorable to the petitioner." Doc. 31 at 192 (internal quotation marks and citation omitted). Because the state court reached a decision on the merits concerning Petitioner's allegations of ineffective assistance, the Court may address grounds four and five of the federal petition, which allege ineffective assistance of trial and appellate counsel.

### A.    Standard for Reviewing Counsel's Assistance

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "[T]he right to counsel

---

[7] On February 10, 2010, Schweitzer moved to withdraw as Petitioner's attorney, declaring that Petitioner "had not fulfilled his obligations under the retainer agreement." Lodged Doc. 7, CT 248. After the trial court granted the motion and continued the pretrial motions, Petitioner elected to proceed without the assistance of an attorney, executing a *Farretta* waiver on March 1, 2010. *See Faretta v. California*, 422 U.S. 806 (1975). On November 2, 2010, Petitioner withdrew his request to represent himself, and the trial court appointed Girardot to act as Petitioner's attorney.

is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness" at the time of trial and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The *Strickland* test requires Petitioner to establish two elements: (1) deficient attorney representation and (2) prejudice. Both elements are mixed questions of law and fact. *Id.* at 698.

These elements need not be considered in order. *Id.* at 697. If a court can resolve an ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's performance was deficient. *Id.*

The scope of federal habeas review of a claim of ineffective assistance of counsel is narrow. *Dows v. Wood*, 211 F.3d 480, 484 (9th Cir. 2000). A habeas petitioner has the burden of proving that the state court applied the *Strickland* standard in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 699 (2002).

To prove that an attorney's performance was deficient, a petitioner must establish that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. This requires the petitioner to identify the acts or omissions that he alleges were not the result of reasonable professional judgment. *Id.* at 690. In a federal habeas action, the court must then determine whether considering the facts and circumstances as a whole, the identified acts or omissions were outside the range of competent and professional legal assistance. *Id.* "We strongly presume that counsel's conduct was within the wide range of professional assistance, and

that he exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990).

The standard for reviewing counsel's performance is "highly deferential." *Strickland*, 466 U.S. at 689. "[E]very effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The petitioner must overcome the presumption that the challenged behavior constituted "sound trial strategy." *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). "The object of an ineffectiveness claim is not to grade counsel's performance." *Strickland*, 466 U.S. at 697.

### B.   Trial Counsel Schweitzer's Legal Assistance Was Not Ineffective

Petitioner contends that Schweitzer, whose successful suppression motion had resulted in dismissal of the original case against Petitioner, rendered ineffective assistance when, without first obtaining Petitioner's consent, during the pendency of the second action against Petitioner, Schweitzer withdrew the appeal filed following the first action. *See* Doc. 31 at 36. The petition states "counsel filed an appeal *presumably anticipating the grounds to include a challenge under Penal Code Section 1538.5(j) and due process*." *Id.* (emphasis added). Petitioner further alleges that dismissing the appeal deprived Petitioner of his right to move for suppression of the evidence in the second action.

An examination of the claim against Schweitzer reveals two reasons for concluding that the state court reasonably determined that Schweitzer's legal assistance was not legally ineffective. First, as expressed in the petition, the claim is both logically and factually deficient. Second, even if the petition's unsupported allegations and assumptions were to be treated as true, Petitioner did not satisfy his burden of proving the two prongs of the *Strickland* test to establish that Schweitzer provided ineffective assistance.

1.  **Assumption: The Prosecution Dismissed the First Case to Circumvent the Order Suppressing Evidence**

Petitioner's argument assumes that the first case against Petitioner was dismissed to circumvent Petitioner's successful motion to suppress certain evidence. Nothing in the record supports this assumption, and Petitioner provides no factual support from outside the record, as by including documentation from the first proceedings.

Respondent contends that Petitioner misstates the facts and circumstances of the withdrawal of the initial charges. According to a August 28, 2009, declaration filed by Deputy District Attorney Kevin P. Cook in support of his brief opposing Petitioner's motion to disqualify the prosecuting attorney for conflict of interest under California Penal Code § 1424,[8] the initial case against Petitioner was dismissed June 16, 2009, on the eve of trial, as a result of newly discovered evidence and the unavailability of certain transcripts and audiotapes relating to several charges. Cook declared under oath that:

> 2) c) The defendant did object when the [P]eople moved to dismiss the case in furtherance of justice. A crucial, and material piece of evidence was not going to be available for trial, and as such, the jury would not have the opportunity to view (transcripts) and hear (audio tapes) as it related to several of the charges. Also, just prior to the jury trial, the [P]eople received additional information concerning the case. The [P]eople did loose [*sic*] some counts at a prior Penal Code (PC) section 538.5 and PC 995 hearing, but the [P]eople would point out, even with that defense success, the defendant still faced seven felony counts, with six of those counts being strike offenses under Penal Code (PC) Section 1170.12.
>
> d) The defendant's statement as to his incarceration status is also inaccurate. The defendant now argues he, and his defense counsel, believed that defendant was going to be released from custody due to the People's motion to dismiss. What the defendant has failed to state is that the People advised the court and defense of their intent to re-file charges against the defendant. In fact, the People requested to file charges in court, but were advised that the court was in trial and a new complaint would have to be filed at the criminal window. The People advised the defense that the motion would be filed, and they would be requesting that the defendant

---

[8] The defense sought to disqualify Cook based on a statement to Schweitzer's law partner that he "hated" Schweitzer.

arraigned that day.  The defendant was brought to court on June 16, 2009, but the arraignment was continued to the next day so the defendant's attorney could be present . . . . .

e)  Due to the lack of available evidence, the [P]eople were unable to proceed on the day set for trial.  Additional evidence has been received which implicated both defendants in criminal actions, and the prior evidentiary issues have been corrected since that day.

Lodged Doc. 7, 1 CT 219-20.[9]

Petitioner's reply brief ignores both Respondent's argument and the declaration supporting it.  In the total absence of factual support, the Court cannot accept Petitioner's assumption that the first case against him was dismissed to circumvent the trial court's grant of Petitioner suppression motion.

### 2.     Assumption: The Appeal Sought to Preserve the Order Suppressing Evidence

Petitioner assumes that the appeal somehow concerned the preservation of the first action's order suppressing evidence for application in the second. Nothing included in the state court record or submitted in the federal habeas action indicates the subject matter of the appeal. The supplementary exhibits appended to the petition include only bare documentation that Schweitzer filed an appeal on Petitioner's behalf in the California Court of Appeal on June 22, 2009, and voluntarily dismissed it on September 29, 2009.  Petitioner provides no documents detailing the substance of the appeal or the reason(s) for its dismissal.  As a result, Petitioner's "presumption" that the appeal included a challenge under former California Penal Code § 1538(j) and due process (*see* Doc. 31 at 36) consists of nothing more than an unsupported assumption.

### 3.     Withdrawal of Appeal Without Petitioner's Consent

Similarly, Petitioner's claim that Schweitzer dismissed the appeal without Petitioner's consent is presented without factual support.  And even if Schweitzer dismissed the appeal without securing Petitioner's consent, the proposition that an attorney may not dismiss an appeal without the consent of the defendant has no support in established federal law.  To the contrary,

---

[9] References to "defendants" reflect that Petitioner's father, Bonnis Cole, was initially a co-defendant on a single charge of possession of an illegal assault weapon.  That charge was dismissed before trial.

existing precedent supports an appellate attorney's duty to apply professional judgment in determining the most beneficial strategy for an appeal on his or her client's behalf. No U.S. Supreme Court decision suggests "that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

"[I]n holding that a State must provide counsel for an indigent appellant on his first appeal as of right," the Supreme Court "recognized the superior ability of trained counsel in the 'examination into the record, the research of the law, and marshalling of arguments on [the appellant's] behalf.'" *Id.* at 751 (quoting *Douglas v. California*, 372 U.S. 353, 358 (1963)). In determining whether an attorney's appellate assistance was ineffective, a court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Strickland*, 466 U.S. at 689). The Court cannot accept Petitioner's unsupported allegation that Schweitzer wrongfully dismissed the appeal without Petitioner's consent.

### 4. Assumption: The Appeal Was Required to Preserve Petitioner's Right To Move for Suppression of Evidence in the Second Action

In any event, Petitioner's contentions concerning the pending appeal are immaterial since Petitioner's reason for protesting the dismissal of the appeal relates to the misconception that when Schweitzer dismissed the appeal, Petitioner lost his right to suppress evidence in the second proceeding. Petitioner's premise is incorrect. Former California Penal Code § 1538.5(j), applicable at the time of Petitioner's trial in the second proceeding, explicitly permitted Petitioner to move to suppress evidence in the second proceeding. In fact, Petitioner moved to suppress the evidence but, in light of the Prosecution's introduction of new evidence, the trial court denied the motion.

To the extent that the suppression motion claim concerns the state court's application of state law, this Court may not review it. "[F]ederal habeas corpus relief does not lie for errors of

state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*citations omitted*).  *See also, e.g., Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (Absent clearly established Federal law, a state court's admitting irrelevant or overtly prejudicial evidence is not sufficient to justify issuance of a writ under AEDPA); *Randolph v. California*, 380 F.3d 1133, 1147 (9th Cir. 2004) ("A violation of state evidence rules is insufficient to constitute a due process violation"); *Hernandez v. Ylst*, 930 F.2d 714, 719 (9th Cir. 1991) ("Federal courts are extraordinarily chary of entertaining habeas corpus violations premised upon asserted deviations from state procedural rules"); *Jamal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("We do not review questions of state evidence law"); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989) ("[E]rrors of state law do not concern us unless they rise to the level of a constitutional violation").  The Antiterrorism and Effective Death Penalty Act imposes "a highly deferential standard for evaluating state-court rulings," requiring "that state-court decisions be given the benefit of the doubt."  *Woodford*, 537 U.S. at 24 (quoting *Lindh*, 521 U.S. at 333 n. 7).

### 5. <u>Summary</u>

Petitioner failed to carry his burden of proving that Schweitzer's performance fell below an objective standard of reasonableness and that but for Schweitzer's unprofessional conduct, Petitioner's trial would have ended differently.  The Court should not grant habeas relief based on Petitioner's allegation that Schweitzer provided ineffective assistance at trial.

### C. <u>Girardot Did Not Provide Ineffective Assistance</u>

As previously noted, neither the prosecution nor the defense called Mrs. Cole to testify at Petitioner's trial.  At Petitioner's sentencing hearing, however, Mrs. Cole asserted that Petitioner had not seriously injured her and that the blood in her eye resulted from her having glaucoma.[10] Petitioner contends that by failing to interview Mrs. Cole before trial and to present that testimony at trial, Girardot provided ineffective assistance.  As with the claim against Schweitzer, Petitioner provides no factual basis for his claim that Girardot failed to interview Mrs. Cole.

Mrs. Cole's post-conviction statement is not credible.  Mrs. Cole did not correct police assumptions following Petitioner's arrest that the bloody eye resulted from the domestic assault.

---

[10] Mrs. Cole's statement was not given under oath.

1   Further, if Mrs. Cole's bloody eye factually resulted from her having glaucoma, one could

2   reasonably assume that even if she did not personally interact with trial counsel or disclose her

3   illness to police, Petitioner would forcefully have asserted that fact from his arrest, convinced

4   Schweitzer of the need to document Mrs. Cole's condition, argued Mrs. Cole's pre-existing eye

5   injury during his period representing himself, and advised Girardot that the eye injury resulted

6   from Mrs. Cole's glaucoma.  Petitioner did none of these things.  Instead, he testified that his

7   paramour Priscilla, whose surname he did not know, punched Mrs. Cole in the eye while

8   Petitioner was sleeping and fled to the yard of a neighbor with whom Petitioner had an ongoing

9   dispute.  Except for Mrs. Cole's sentencing statement, nothing in the record suggested that Mrs.

10  Cole suffered from glaucoma or that the bloody eye resulted from that condition rather than from

11  Petitioner's assault.

12      Even if the Court were to accept the farfetched proposition that by interviewing Mrs.

13  Cole, Girardot would have learned that the apparent eye injury was glaucoma, Mrs. Cole's

14  testifying in that respect was not likely to have prevented Petitioner's conviction. Police

15  photographs of Mrs. Cole depicted not only the alarming bloody eye but also various swellings,

16  bruises, and abrasions on her face and head.  In arguing that he could not have been convicted of

17  causing serious injuries to his wife, Petitioner does not acknowledge her other injuries.  Petitioner

18  assumes that only the bloody eye established great bodily injury and that his wife's conclusory

19  claim that she was not seriously injured would have been sufficient to defeat the serious injury

20  enhancement of the assault charge.  Mrs. Cole's testimony was also unlikely to have overcome

21  Petitioner's earlier statements to police that the eye injury resulted from Priscilla's assaulting

22  Mrs. Cole or the multiple taped telephone conversations in which Petitioner sought to convince

23  his wife not to talk to police or testify, and if she provided a statement or testimony, to say that

24  Priscilla assaulted her.

25      Petitioner does not establish that by failing to learn that Petitioner was not responsible for

26  his wife's eye injury, Girardot's legal assistance was ineffective.

27  ///

28  ///

### D. Appellate Counsel's Failure to Advance Claims Favored by Petitioner Did Not Constitute Ineffective Assistance

Petitioner contends that appellate counsel Daniel G. Koryn provided ineffective assistance by failing to argue that (1) Petitioner's due process rights had been violated by admission of Chavarria's belief that Petitioner had previously been involved in a crime involving the use of a deadly weapon; (2) the trial court erroneously denied Petitioner a jury trial on his prior convictions; (3) evidence of great bodily injury was insufficient in light of Mrs. Cole's statement at sentencing that her apparent eye injury was the result of her chronic glaucoma; and (4) trial counsel was ineffective in failing to move for a mistrial following Mrs. Cole's statement at sentencing.

#### 1. Standard of Review

Federal constitutional law does not mandate that appellate counsel present every claim that a defendant wants to pursue on appeal. An indigent defendant's right to appellate representation does not include a right to present frivolous arguments to the court. *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 436 (1988). Indeed, an attorney is "under an ethical obligation to refuse to prosecute a frivolous appeal." *Id.* As noted above, no U.S. Supreme Court decision suggests "that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones*, 463 U.S. at 751.

The purpose for requiring counsel for a criminal defendant's first appeal of his conviction is to provide the defendant with the education, and professional experience and expertise of a trained attorney in the 'examination into the record, the research of the law, and marshalling of arguments on [the appellant's] behalf.'" *Id.* at 751 (quoting *Douglas*, 372 U.S. at 358). To "impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would

disserve the very goal of vigorous and effective advocacy that underlies" the requirement that "an appointed attorney must advocate his client's cause vigorously and may not withdraw from a nonfrivolous appeal." *Jones*, 463 U.S. at 749, 754 (quoting *Anders v. California*, 386 U.S. 738 (1967)).

A hallmark of effective appellate advocacy is counsel's ability to omit weaker issues on appeal. *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Jones*, 463 U.S. at 752. Appellate counsel cannot be found ineffective for failing to raise an argument that would not have been successful. *Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992).

Nor is appellate counsel required to advance a claim that would detract from the effectiveness of stronger claims. In *Smith v. Robbins*, 528 U.S. 259, 288 (2000), the Supreme Court endorsed the analysis suggested by the 7th Circuit in *Gray v. Greer*:

> When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues in appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger that those presented, will the presumption of effective assistance of counsel be overcome.

800 F.2d 644, 646 (7th Cir. 1986).

### 2. Officer's Belief That Petitioner Had Previously Used Deadly Weapon

In Petitioner's trial, Officer Chavarria testified that when he responded to the call to perform a welfare check at Petitioner's home, he was frightened because he believed the Petitioner, who was well known to local law enforcement officers, had used a deadly weapon in prior incidents in which the police became involved. Pursuant to California Evidence Code § 1101(b), the trial court admitted Chavarria's testimony as proof of Chavarria's state of mind,

19

but not as proof that Petitioner had been involved in either incident.  In the direct appeal of

Petitioner's conviction, Koryn challenged the trial court's admission of Chavarria's prior bad

act testimony as an abuse of its discretion under § 1101(b).

Evaluating California state law on direct appeal, the California Court of Appeal rejected

Petitioner's claim that Chavarria's testimony concerning this belief was irrelevant prior bad acts

evidence barred by California Evidence Code §§ 352 and 1101(b).  The court found that

whether Chavarria was reasonable in his fear for his safety following Petitioner's threat to shoot

the officers was an element of the criminal threat count (Cal. Penal Code § 422) with which

Petitioner had been charged as a result of his threatening to shoot the officers if they attempted

to enter his home to check Mrs. Cole's welfare.

"When the purpose of introducing evidence of other crimes is not to show bad character

but to establish some other fact in issue, the limited admissibility doctrine allows its admission

for that particular purpose." *People v. Gay*, 28 Cal. App. 3d 661, 669 (1972).  In determining

whether to admit such evidence as relevant to another issue, a trial court must consider the

"unique facts and issues of each case," and determine whether the probative value of the

testimony is outweighed its possible prejudice.  *Id.*  The analysis must proceed carefully in

testimony involving uncharged conduct.  *People v. Ewoldt*, 7 Cal. 4th 380, 405 (1994).  When

the primary purpose for admitting evidence of the uncharged prior criminal conduct is proving a

crucial element of a charged crime, the evidence will rarely be ruled inadmissible.  *People v.

Garrett*, 30 Cal. App. 4th 962, 967 (1994).

The state courts' application of the California Evidence Code is not a matter cognizable in

federal habeas proceedings.  "[F]ederal habeas corpus relief does not lie for errors of state law."

*Estelle*, 502 U.S. at 67 (*citations omitted*).  The Antiterrorism and Effective Death Penalty Act

("AEDPA") imposes "a highly deferential standard for evaluating state-court rulings," requiring

"that state-court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. at 24 (quoting *Lindh*, 521 U.S. at 333 n. 7. Petitioner may only seek habeas relief if the nature or duration of his imprisonment violates federal constitutional provisions.

Petitioner attempts to transform the state evidentiary claim into a federal constitutional question by contending that Koryn erred in challenging the admission of the evidence rather than raising a due process challenge that Evidence Code § 1101(b) was void for vagueness. According to Petitioner, Section 1101 fails to put an individual on notice that "accusations, which have not been previously plead and proved in a court of law, may serve as evidence against him." *See* Doc. 31 at 32. His claim lacks merit. The plain language of § 1101(b) belies Petitioner's claim: it specifically provides for the admission of "a crime, a civil wrong, or *other act*" that is relevant to prove another fact in issue.

### 3.     No Right to Jury Trial On Prior Convictions

Petitioner contends that Koryn's representation was ineffective because he failed to claim that Petitioner's Sixth Amendment right to a jury trial was violated when the trial court pronounced sentence applying Petitioner's prior convictions without first conducting a jury trial to determine those prior convictions. Petitioner contends: "This error prejudiced the Petitioner because it is more likely than not that such a challenge would have resulted in the reversal of or reduction of his sentence." Doc. 31 at 39-40. Petitioner misunderstands his sentence, which did not consider any prior convictions. The sole sentencing enhancement reflected the jury's finding that Petitioner inflicted great bodily injury on his wife. Thus, Koryn did not err in declining to pursue Petitioner's claim that he was entitled to a jury trial to determine Petitioner's prior offenses.

Even if Petitioner's proposed claim was based on accurate facts, he would have no federal constitutional right to a jury trial to determine the validity of prior convictions intended

to enhance his sentence. *See, e.g., Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Almendarez-Torres v. United States*, 523 U.S. 224, 243-44 (1998) (holding that when a defendant's sentence may be enhanced based on prior convictions, the prior convictions relate only to the sentencing determination and are not elements of the offense that must be submitted to the jury).

### 4. Mrs. Cole's Sentencing Statement

Petitioner contends that by failing to rely on Mrs. Cole's sentencing statement, Koryn erred in two ways. First, because of Mrs. Cole's sentencing statement that her bloody eye resulted from glaucoma, not an assault, Koryn should have claimed that the evidence was insufficient to prove that Petitioner inflicted great bodily injury on his wife. Second, Koryn should have argued that Girardot's representation was ineffective because Girardot failed to move for a mistrial following Mrs. Cole's sentencing testimony.

### a. Sufficiency of the Evidence

Petitioner contends that, in light of Mrs. Cole's statement at sentencing, insufficient evidence supported the jury's finding that Petitioner's assault inflicted great bodily injury on her. Petitioner misunderstands federal law governing due process violations arising from insufficient evidence.

To determine whether the evidence supporting a conviction is so insufficient that it violates the constitutional guarantee of due process of law, a court evaluating a habeas petition must carefully review the evidence in the record to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998). The district court must

22

consider the evidence in the light most favorable to the prosecution, assuming that the trier of fact weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in the manner that most supports the verdict. *Jackson*, 443 U.S. at 319; *Jones*, 114 F.3d at 1008. The court may not consider matters outside the trial record but must consider all of the evidence admitted by the trial court. *McDaniel v. Brown*, 558 U.S. 120, 130-31 (2010).

In post-conviction proceedings following an unsuccessful direct appeal, Brown, a prisoner convicted of the brutal rape of a nine-year-old child, contended that his trial counsel provided ineffective assistance by failing to object to the admission of certain DNA evidence implicating Brown. *Id.* at 125. After exhausting state proceedings without success, Brown filed a federal habeas petition claiming a violation of *Jackson* in that there was insufficient evidence to convict him of the crime. *Id.* at 126. Unlike the typical *Jackson* argument, Brown contended that the evidence would have been insufficient if the trial court had excluded certain DNA evidence that Brown deemed "inaccurate and unreliable." *Id.* In support of his argument, Brown submitted a supplemental expert report prepared after the direct appeal that had never been submitted to any state court. *Id.* The district court admitted the report to supplement the record, set aside the "unreliable DNA testimony," and held that without the DNA evidence "a reasonable doubt would exist in the mind of any trier of fact." *Id.* (quoting *Brown v. Farwell*, 2006 WL 6181129 at *5, n. 2 (Nev. Dec. 14, 2006) (No. 3:03-cv-00712-PMP-VPC)). The Ninth Circuit affirmed. *See Brown v. Farrell*, 525 F.3d 787 (9th Cir. 2008).

The Supreme Court reversed, holding that the district court erred in applying the *Jackson* standard to less than the full trial record and in considering matters outside the record. *McDaniel*, 558 U.S. 120. The Court explained:

> Respondent [Brown] no longer argues it was proper for the District Court to admit the Mueller Report for the purpose of evaluating his *Jackson* claim . . . and concedes the 'purpose of a *Jackson* analysis

23

is to determine whether the jury acted in a rational manner in returning a guilty verdict based on the evidence before it, not whether improper evidence violated due process" . . . There has been no suggestion that the evidence adduced at trial was insufficient to convict unless some of it was excluded. Respondent's concession thus disposes of his *Jackson* claim. The concession is also clearly correct. An "appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal." *Lockhart v. Nelson*, 488 U.S. 33, 39 . . . (1988). Because reversal for insufficiency of the evidence is equivalent to a judgment of acquittal, such a reversal bars a retrial. *See Banks v. United States*, 437 U.S. 1, 18 . . . (1978). To "make the analogy complete" between a reversal for insufficiency of the evidence and the trial court's granting a judgment of acquittal, *Lockhart*, 488 U.S. at 42 . . . , "a reviewing court must consider all of the evidence admitted by the trial court," regardless whether that evidence was admitted erroneously, *id.* at 41 . . . . .

*McDaniel*, 558 U.S. at 130-31 (parallel citations and citations to the record omitted).

Petitioner's claim that Koryn acted ineffectively in failing to use Mrs. Cole's sentencing statement to prove that insufficient evidence supported Petitioner's conviction is analogous. The holding in *McDaniel* precludes this Court from considering Mrs. Cole's out-of-court statement or using it as justification to consider less than the full case record. In light of the holding in *McDaniel*, Koryn reasonably omitted the claim that the sentencing statement rendered the evidence insufficient to convict Petitioner. In this regard, his representation was not ineffective.

### b.    Girardot's Failure to Move for a Mistrial

Finally, Petitioner contends that Koryn's representation was ineffective because Koryn failed to claim that Girardot ineffectively represented Petitioner by failing to move for a mistrial following Mrs. Cole's sentencing statement. Respondent does not address this claim. Again, Petitioner misunderstands applicable law.

A mistrial is commonly defined as "[a] trial that a judge brings to an end, without a determination on the merits, because of a procedural error or serious misconduct during the proceedings." *Black's Laws Dictionary* at 1023 (8th ed. 2004). A mistrial also occurs when the proceedings end because the jurors are unable to agree on a verdict. *Id.* In other words, a "'mistrial' is equivalent to no trial and is [a] nugatory trial." *In re Bartholomae's Estate*, 261 Cal.

App. 2d 839, 842 (1968). Because the jury verdict was rendered and Petitioner's trial was complete before Mrs. Cole provided her sentencing statement, a mistrial was not a procedural possibility. Girardot properly did not move for a procedurally impossible order, and Koryn properly did not claim that Girardot was ineffective in doing so.

## V. <u>Certificate of Appealability</u>

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to

proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief to be debatable or wrong, or conclude that the issues presented required further adjudication. Accordingly, the Court declines to issue a certificate of appealability.

## VI.    **Conclusion and Recommendation**

The undersigned recommends that the Court deny the Petition for writ of habeas corpus and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:    **July 28, 2017**                          */s/ Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE